That brings us to our last case of the day, Todd v. Fayette County School District, and we will begin with Mr. Billups. Good morning, Your Honors. My name is Matt Billups. I'm representing Ms. Todd and Ms. Peel. Your Honors, this is a direct evidence disability discrimination case where on cross-examination during deposition, the decision-maker testified that the reason Ms. Todd lost her employment was because of his concern about the risk of future harm arising from her psychological or emotional impairment. The district court magistrate and the district court both concluded that it was not direct evidence because the superintendent first said it was based on effectiveness and that one had to draw an inference between effectiveness and the testimony in the next sentence, the next question, that it was that what he meant was the risk of harm arising from her psychological impairment. However, this is not a case where the jury would have to draw that inference because the decision-maker himself clarified that effectiveness in his mind was defined as the risk of future harm arising out of her psychological impairment. Counsel, if the disability is a psychological condition, wouldn't direct evidence require a statement of, I fired Ms. so-and-so because she has a major depression disorder? Not that she has a risk of harm that's associated with someone who has major depressive disorder or a risk of harm because of what she said, but that I fired her because of her disorder. Isn't that direct evidence rather than the extra step that has to be taken of that he associated the risk of harm with that and that that means that it was because of the other thing? In other words, there's a still step that has to be taken? No, Your Honor. Two cases from the Supreme Court make that clear. School Board of Nassau County, Florida versus R-Line and Braddon v. Addict. Both of those cases could clarify that where an employer is making a decision based on the risk of harm caused by a disability or which they believe is caused by a disability, that requires them to prove as an affirmative defense that the individual was a direct threat. So that's a separate counsel. The direct threat issue is a separate question. It goes to an affirmative defense and how it intersects with pretext where you're establishing a prima facie case of discrimination. That is separate and apart from the question that we're discussing, which is, is it direct evidence to say I am not hiring or I am firing this person because of a risk associated that has manifested itself in threats from a psychological illness rather than I am you are disabled? First of all, Your Honor, there's two questions there. Either way, the employer would have to prove in order to say that this is because of the risk of harm arising from this psychological impairment that has proving that the individual is not otherwise qualified. But that's not the... Counsel, I understand all that, but that doesn't go to the direct evidence issue. You started by saying this is a direct evidence case and you want to talk about prima facie case and defenses and pretexts and I understand that and we can talk about that. But before we get there, the alternative way to prove your claim is through direct evidence and you said this is and my question to you is, is it not an inference at least one step removed from the statement I am firing you because you are disabled from I am firing you because you are risk of harm associated with your psychological disability? I do not believe so, Your Honor, and that is in part based on language in our line where the Supreme Court said that one of the primary purposes in that case section 504 the Rehabilitation Act was to combat the perception of harm based on an individual's diagnosis of a medical condition, in that case tuberculosis, that was not supported by objective medical evidence and that was clarified... There's no doubt that that's true, counsel, there's no doubt that that is true, but that doesn't really answer the question. As I understand our definition of direct evidence, it requires zero inference. Even a reference to someone's race and a race discrimination case or gender in the course of discussing their not being hired or not being promoted is not enough unless there is zero inference that can be done from from the statement to the reason why this person was fired or because of and I'm just I'm having a hard time understanding how and not am I talking about a primate patient case and the other things you've argued and direct threat, I'm simply talking about how the statement you've identified is a direct evidence statement. Well let me analogize to the race discrimination context. In Farrell versus Parker group, the 11th Circuit held that it was direct evidence that an employer racially segregated its workforce because the employer believed that this would be beneficial in communication with customers. Well the employer says we did this because of a benefit in communicating with customers and in explaining the the communication with customers they said that well yes it was because we believe that having someone black communicating with black customers and vice versa. So in this case we have a statement that it is based on I mean saying that it's based on a risk of harm arising from her mental impairment is the same as saying that it was based on his fear of a risk that there would be harm arising from her mental impairment and his fear was without medical basis. But that goes to whether it's a real reason or not not not if it's not inferential that that's what you're just seem to be mixing apples and oranges. Let me ask you two other questions before I stop on this topic. We have cases for instance Scott versus Suncoast beverage where we said quote we'll burn that black ass end quote was not direct evidence and in Wilson we've said the quote even though women aren't typically in that type of position we'll see what happens when you throw your name there at the corporate for a promotion case was also not direct evidence. I just have a hard time seeing where we've said that those aren't direct evidence where this is. That's number one and then number two do we you seem to isolate this one snippet of a very large deposition and not include any discussion of the affidavit but when we look at direct evidence do we not look at sort of the whole together or the context in which a statement is made rather than just a snippet of a very short deposition where you've sort of gone on and on and on about the reason why someone was fired? Well your honor as the witness admitted he had prior to these questions essentially summarizing his motivation he had acknowledged half a dozen times earlier that this was his motivation and this was what he admitted. Twice in his deposition he acknowledged that the effectiveness was directly tied to his perception about her psychological impairment. Now that perception could have been risk of harm that perception could have been I don't want somebody with this disability in my workforce but it was his perception about the disability that was not tied to any medical evidence that was the issue. I would contend that that is direct evidence of disability discrimination. I would further contend that it was strong circumstantial evidence under Smith v Lockwood Martin, Gabe Vermeer and that line of decisions. Counsel this is Robin Rosenberg. It seems to me like it was if you read it in context what he was saying was you know based on the threats that she had already made and continued to make even after her her psychologist cleared her that she could not be effective. That it was based on her conduct in the form of these threats that she kept making as opposed to based on you know the fact that she had this mental condition that that's what it that's what it seems to me when I read the entire deposition in context but it sounds like you disagree. I wonder if you could direct me to where you think is the best evidence you know not in isolation not like one line in isolation but where in the deposition would be the best evidence of of what your position is of what was expressed. My position is that he was looking not retrospectively at conduct but prospectively at a perceived risk and I think the best evidence that he was looking at a perceived risk which necessarily is something that would rise in the future is on pages 33 and just 37 of his deposition where he testifies that he was looking at the risk of harm as opposed to prior conduct. Now in his there is other evidence to support that in the notes taken by Ms. Robertson at Exhibit 1 of her deposition where he discusses with her talking to her health care provider whether they can make sure she's taking her medication and that he wanted to decide that the information came from the inpatient treatment facility to which they have her committed rather than her treating psychologist with whom she had a six and a half year relationship. All of that I think strongly rebuts the contention that this is based on conduct as a face as opposed to based on his perception of or his fears about her disability. Now back up one second. I'm sorry. I'll let you go ahead and back up for one second and then I have a question. The extent to which his decision is based on his belief about what he had been told or his belief that what he had been told was was accurate. There's a difference between what defendant argued in his motion for summary judgment which is that plaintiff was not otherwise qualified and this subsequent argument that well it was based on conduct and his perception of her conduct. His testimony demonstrates that it was based on whether her psychological or emotional impairment rendered her otherwise unqualified because of the risk of harm. Okay counsel you've gone on at least a second. My question is assume that we follow the Second Circuit and the Seventh Circuit in Sister and does that not mean that you lose that this case is simply not a direct threat case invoking the affirmative defense which has to have medical evidence and do not those cases say and hold that even though the conduct the threats that even though that conduct and threat that is intolerable and constitutes a legitimate reason for the termination even though that conduct derives from the mental illness still you're not into the direct threat affirmative defense. Your Honor that is exactly the point that I was getting to that in those cases the conduct itself had to be proved and it had to be proved as an undisputed fact not did somebody claim that this conduct occurred all of those cases the conduct itself was was admitted and the admitted conduct was determined to show that the individual was not otherwise qualified in this way they have not proved the conduct by undisputed evidence. But counsel, with respect to the traditional sort of analysis the burden shifting analysis even if we were to assume a prima facie case it doesn't matter I mean it might matter in making the prima facie case whether it whether she disputes what Sweatt and Myers and the rest of them said but when we get to the reason the legitimate business offered why she was terminated it doesn't really matter whether or not she said it it only matters under the analysis whether the decision-makers had a good faith belief that isn't that right and if so isn't that a problem for your client? No, Your Honor, for two reasons. One because that mixes the determination of otherwise qualified with the subsequent determination whether it was based on disability and the otherwise qualified determination has to be based on undisputed fact not based on undisputed perception. Second, the superintendent and the notes about the superintendent's communications and what he was actually concerned about we believe rebut that the subsequent post deposition affidavit in which he claimed that it was based on conduct because he did not talk about it being based on conduct he talked about his fears of I mean at the time that he had this conversation and was talking about whether she was how could they be sure she was taking her medication etc he already knew about conduct. Counsel your time has expired. Thank you. All right thank you counsel and that brings us to Mr. Smith. Thank you may it please the court my name is Brian Smith I'm arguing for appellee in this case this is a case where the district court determined the Americans with Disabilities Act does not require a school district to return a middle school teacher to the classroom and place dozens of students under their supervision after that teacher threatened to kill themselves and their child who is a student in the school and expresses multiple plans and methods to carry out the murder-suicide to co-workers who is believed to take an excessive amount of annex at school and threatens to harm administrators at the school. As has already I think been the case it might be if I guess it would be if the superintendent had said I don't care what her conduct was I don't care what the appellant did I don't want teachers who have major depressive disorder working in the school district so I'm going to terminate her employment that would be a direct evidence case but that's not what the evidence in this case is. Here the superintendent said I can't have a teacher who engages in this kind of whether it was caused by a mental disability or not. Counsel can I go to can I go to Judge Anderson's question which I think is a fantastic one and one that I have which is that if we don't agree with the second and seventh circuits in other words those courts which have said that a threat that has happened already a past conduct does not qualify for the direct threat affirmative defense and find that the direct threat affirmative defense does apply here or defense does apply here then isn't that problematic for your position because there is no objective medical evidence that she in fact was unqualified. Yeah there certainly is that implication from the direct threat defense and and that of course is a term of art but it's not implicated just because something occurs that could be characterized as a threat to somebody's health or safety. It's meant to be implied in cases that evolve involve allegations of discriminatory applications of qualification standards rather than cases that involve disparate treatment which is which is this case I mean direct threat defense is an affirmative defense we didn't even raise and and yet we continue and I don't know if I've ever argued as much about a defense that that I'm not maintaining as a defense. Let me go back let me go let me go back to your point because you raise a very interesting point and that is that it goes to qualification standards for hiring not for someone who is currently employed or seeking another position or currently employed not someone who is good to be hired or seeking another position. If that that is the case do we have any case law which has applied it in this context in the disparate treatment context for termination or some other adverse employment outside of being hired or being promoted? Yes I mean I would say number one the Ray case which we cite in our in our in our brief which was a it was affirmed on appeal without decision but the but but it was a case in which the the employee engaged in behavior at at work which was later found to which was which was found to be problematic and that's what what the termination was based on. I'm sorry let me be clear is there is there a precedent of this court where we have applied the direct threat defense in the context of or outside of the qualification standards for for hiring or promotion or some other qualification standard rather than for for a termination case a disparate treatment termination case like this one? No not none that I'm aware of and none that's been cited by either party in this case. The the direct threat defense is is intended to be implicated when you're trying to an employer is trying to screen out potential employees from that employment based on claims that it is a disability that that individual has may make the job unsafe for them for that individual or for other employees so so if you had a an employer who doesn't want to hire for example an individual with narcolepsy for a job that involves controlling heavy machinery around other employees because they're worried about the the threat that may pose to the safety of themselves or others that's a direct threat case because they're screening out they're basing things not on conduct that's actually occurred not based on evidence or a belief of what's occurred that affects their ability to effectively perform their job but instead they're solely relying on the fact that an individual has a disability and they're trying to screen out and terminate the employees solely or solely based on that disability as if you as if you said look you have this you have fill-in-the-blank disability you have this mental impairment we're just not going to let you do the job it's not that you demonstrated an inability to do the job it's not that you've engaged in conduct that shows you ought to be terminated and in a non-disabled person would be terminated for the same conduct but it's really looking at the having the disability in isolation and I think that's where it's legitimate to to talk about the Americans with Disabilities Act being concerned with inappropriate perceptions of disability I mean that that's that's that kind of case is that direct threat case that's not what we're talking about here this is a case where there was certainly awareness by individuals in the district of council let me ask you one other question regarding direct threat or one or two a series of questions does where does it assuming it applies where does it come into play does it come into play at the prima facie case stage when determining whether there is a quote-unquote charge of discrimination or does it come into kind into effect at the pretext stage does it come into after the the burden shifting has gotten done and do we have any a case law discussing where that where it would enter assuming it applies not not in the 11th Circuit that I that I found I think it comes more at the end because it's an affirmative defense by the employer so it's not it's not necessarily a prima facie case issue it's almost a separate analysis and and and because that would have to to it would have to be a circumstance where there has been some kind of medical or objective evidence and some kind of individualized assessment I think it's almost a separate component of that traditional analysis if it were to be applied and again here we're not we're not even close to being in that realm so we're talking about previous conduct that actually took place let me turn just a little bit to the to what I think is more the main issue is this is Robin Rosenthal so just you know we have to write an opinion here so for this to be clear if you were writing the opinion you would separately analyze the direct threat defense and say that it wasn't invoked here and it's not relevant and then do the prima facie case and pretext analysis is that what you're saying or did you have something else in mind yes your honor that's that's what I'm saying this is just simply not a direct threat case it doesn't have any implication to the decision here and then we begin the the more traditional analysis with prima facie case and legitimate non-discriminatory reason so much much of what the the briefing by appellant and and those arguments really seem to center around is is whether or not appellant in fact engaged in the behavior that was reported but of course the issue is whether or not the superintendent believed she engaged in the behavior and and it's undisputed that the superintendent believed that she threatened to kill herself and her child to two teachers on Friday January 20th 2017 she made the same threats in a in a more explosive manner the following Monday to the same teachers she made statements multiple plans and methods to kill herself and her child she took an excessive amount of Xanax pills at school that day and a little over two months later made frightening statements to another teacher that indicated a threat to harm administrators at at the school where all these individuals worked and and as the court this court is made clear in the Elrod case you can assume that the complaining employees were lying through their teeth but that doesn't change the analysis counsel just to be clear again this is Robin Rosenbaum if if we were to reach those that you've suggested would you agree then that we would find that there was a material issue of fact at the prima facie stage because if in fact those employees were lying then and she could prove that they were lying and she could prove perhaps that she was qualified but that at the pretext stage then it would not matter what the actual facts were and there would not be a material issue is that what you're basically saying that so I can answer that this way I think this kind of gets to the crux of where to analyze and at what part to analyze this kind of this kind of case where you have behavior that will presume was caused by a disability but the termination was still based on that conduct and whether that should be analyzed as a not otherwise qualified case or in that component in the prima facie case or whether it should be more the non-legitimate non-discriminatory reason and pretext phase and I'm sorry well as your before you answer it though assume just for our purposes because she says this conduct never happened right so she says the conduct never happened so it seems like there's a material issue of fact over whether the conduct actually happened right but there's not a material issue effect or maybe there is about whether the decision-maker here the superintendent believes that the conduct happened right so without getting in too much detail of all the facts there there are there are differences of factually of what appellant says happened and what a belief that happened factually it's not that there's a total and complete disconnect because there are some things that that appellant acknowledges but but not certainly not the complete report that was made by the the teachers and and not what the and certainly opposes what the superintendent may have believed happened so this partly gets to what what opposing counsel was discussing with some of these some of these other cases having no factual dispute involved in those cases where there were no factual disputes where it was clearly acknowledged and there was no disputed to the behavior I think those were the cases that were analyzed more than not otherwise qualified standard and that makes a little bit more sense when the facts are undisputed I think the better approach is that that was done in the system case in the Second Circuit where you're looking at whether there was a legitimate non-discriminatory reason to terminate the employee and and that's the face of the analysis where it doesn't matter as much as if there's underlying facts that are disputed it's what the honestly held belief by the employer is and the conduct here certainly meets that standard so so there's no allegation that the superintendent wouldn't have taken the same action if the same conduct was was took place by a non-disabled teacher it would it would result in the same outcome and there's been no objection there's no been challenge challenge to the report and recommendation or the district courts determination that there was no evidence of pretext and and that and and and that this standard isn't met in terms of it being a legitimate non-discriminatory reason for this termination so there's there's almost kind of a circuit split but it's not it's not as it's not as a parent or it's not as explicit it's just in the analysis of those cases from the in some of the cases in the 11th circuit that we cited as to whether you're you should analyze this under not otherwise qualified standard or later on as a pretext the ultimate issue in these disability discrimination cases is whether or not the action was taken because of the employment warning with with that idea in mind and and clearly it's not the case here the superintendent believed that these behaviors were engaged in by this by this employee it's certainly a legitimate reason in order to have that termination without regard to any any necessary fears of whether it would happen again it's also about the conduct that already happened and that's what the superintendent I think acknowledged in his in his deposition and and certainly acknowledged in the affidavit this was about whether she could to effectively do her job but also about how this is effect how this would affect as he put other variables in the equation that it's not just about the teacher it's also about how effective they are in conducting themselves in their duty and responsibility as far as teaching so when a superintendent having to make this this decision this determination when you have this kind of behavior you're you're looking at the superintendent as to whether to put students dozens of students under this individual supervision and control after they've engaged in this behavior after you believe that this engage this this behavior happened and and there's no there's no implication in the ADA when that superintendent decides this is not someone who continue to can continue to be employed in that role so we ask that you we ask that you affirm the district court's decision granting summary judgment to defendants thank you mr. Smith mr. bill if you have five minutes of rebuttal time thank you your honor I would like to first disagree with opposing counsel on the question of whether there is precedent on this issue in school board of Nassau County Florida versus our line I'd like to read this sentence this goes to the question of the perceived risk of harm arising from a disability is the same as basing a decision on the disability the Supreme Court said it would be unfair to an allow to allow an employer to seize upon the distinction between the effects of a disease on others the effects of a disease on a patient and use that distinction to justify discriminatory discriminatory treatments in our line the Supreme Court made it clear that the place at which direct threat comes into effect is at the otherwise qualified determination and that's the reason we've raised it because defendants motion for summary judgment solely argued that plaintiff was not otherwise qualified so counsel counsel this is Robert Luck so that means that it goes to the prima facie case right it yes it goes to the property case and right so so here's the so here's the issue if we assume away as the as both the magistrate and the district court judge did that you've established a prima facie case and that we then go on to the pretext stage what you're talking about really doesn't have anything to do with pretext which is whether the superintendent had an honestly held belief that these things happen and that that was the reason why that he fired him now there may be other things as judge Rosenbaum said that would create a genuine issue of material fact on pretext but regarding the direct threat if you're right it only goes to the prime official case and no one here really the magistrate judge the district court and and even in the course of our conversation here has not focused at all on that and is more focused on pretext which doesn't seem to have anything to do with the direct threat defense except your honor that the superintendent's testimony as to his motivation was not that there is a past history of misconduct but that there is a future risk of harm because of the disability except that can judge Rosenbaum discussed and this she asked you this question the context of the deposition affidavit seemed to be that the past conduct informed his discussion of brought back into the classroom that seems to be what he's saying in context where where is that other than like the snippet you quote from your in your briefing here which where is that that rebut first is rebutted by the most of this conversation by Ms. Robinson second it's rebutted by the entire course of conduct by the school what they wanted to do was have her committed to an institution they then questioned whether her psychologist was the appropriate person for them to be communicating with this with about the extent and risk of harm arising from her disability these are not issues about and and third they never asked her about what she did or did not do does that all indicate that they believed it to be true and they thought that she did in fact make the threats that she made your honor it believes that they were aware that she had a psychological disability and that's undisputed no one has argued the contrary but whether it whether they believed that she in fact did those things I don't think it's dispositive considering that they didn't claim this is based on her past misconduct I don't care what her future issues are the because she engaged in misconduct I believe she engaged in misconduct and I'm basing it on what's already happened that's not a council but the council is not kind of a problem because then you could never take employment action against somebody for what they had done in the past I mean isn't that kind of a problem I don't believe so your honor because they take employment action against people because what they've done in the past all the time without concern about whether they're going to do it again I mean there's I've been practicing employment law 32 years and most of the cases are you did this and as a result you are going to be fired and we're not going to consider whether you might do it again isn't that effectively what the district did I mean it said look you you threatened to kill yourself and your son we believe it anyway I understand she she says she didn't do it but we believe it in good faith and even after your mental health professional said you were okay to return to work then you threatened administrators lives and so we think that you're not qualified to be able to control a classroom and have control over and responsibility for a bunch of students I mean why is that why is that a problem well first there's no record of the specifics of what dr. Barrow was told he simply says that he relied on this Robertson's investigation parts of that investigation whenever revealed and but that the more important issue is that you know if the individual that to whom is miss Todd allegedly made this threat toward the administrator this Todd was trying to communicate with the principal and couldn't the communicate principal wouldn't respond to her efforts at communication about clearing her classroom out since they wouldn't let her come back to work her question to her colleague was what do you think she'd do if I just waited for her outside her car because she was concerned about you know these these precise issues and her colleague said no don't do that but the colleague and your client's position about what happened but but if you look at what the colleague wants for said she said that she you know that she seemed that she was scared of what your client said and that she took it to mean that that your client intended harm I mean that's what she said now you're absolutely right that that might not be what she meant and that your client might have been fairly represented but in the end analysis if if the decision-maker in good faith believe once for position then I don't see how I mean I think that's a problem for you I think it would be difficult for the decision maker to believe in good faith that miss Lundford was frightened of miss Todd considering the fact that miss Todd and miss Lundford hung out together in miss Lunsford's car every day while miss Todd waited on her son to return her son to be released from school so I do believe that there is a that there's a real issue with relying on their claim belief in the absence of any personal investigation or communication with miss Todd and the fact that not only did miss Todd's treating psychologists say she was fine but the inpatient treatment facility to which they referred said she was fine and the Superior Court that was dealing with the defects complaint they made said she was fine returned and said she could return to work and such counsel your time has expired. Counselor did you want to just give a one sentence sum up then? Yes your honor we believe that the evidence here is sufficient to show either by direct or circumstantial evidence that there was discrimination on the basis of disability and we would rely on the briefs on the questions of retaliation and interference in refusing to return her to work during that school year. Thank you so much counsel. We will be in recess for the day. Have a great day. Thank you.